# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PIERRE LAMAR MCCALL,

        Petitioner,                      Case Number: 2:08-CV-10489

v.                                          HONORABLE MARIANNE O. BATTANI

CARMEN PALMER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Pierre Lamar McCall has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Michigan Reformatory, challenges his convictions for first-degree murder, three counts of kidnapping and four counts of possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from the murder of his ex-girlfriend, Tiffany Burnett, on October 4, 2002. The Michigan Court of Appeals summarized the case as follows:

> This case arises from the shooting death of defendant's estranged girlfriend and mother of his child, Tiffany Burnett, on October 4, 2002. The prosecutor's theory was that defendant became enraged upon discovering that Burnett had become romantically involved with another woman. Defendant pistol-whipped Burnett for several minutes outside her home in Clinton Township and shot her several times before barricading himself in another home and taking several hostages. He eventually surrendered to police. Defendant's theory was that he was guilty only of voluntary manslaughter because he was acting in the heat of passion, and because the shooting was accidental in that the shots occurred when his gun accidentally discharged on three different occasions.

*People v. McCall*, No. 252753, 2005 WL 2679689, *1 (Mich. Ct. App. Oct. 20, 2005).

## II.

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of first-degree murder, three counts of kidnapping, and four counts of possession of a firearm during the commission of a felony. On November 20, 2003, he was sentenced to life imprisonment for the murder conviction, 30-50 years' imprisonment for each of the kidnapping convictions, the foregoing to be served concurrently with one another and consecutively to four concurrent two-years sentences for the felony-firearm convictions.

Petitioner filed an appeal in the Michigan Court of Appeals, raising the following claims:

I. The trial court's allowance of other uncharged act evidence, pursuant to MRE 404(b), and related hearsay utterances, was an abuse of discretion which denied defendant his state and federal constitutional rights to a fair trial.

II. Defendant was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through misconduct of the prosecutor, which consisted of a pattern of improper presentation of evidence and argument.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. McCall*, No. 252753, 2005 WL 2679689 (Mich. Ct. App. Oct. 20, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims presented to the Michigan Court of Appeals and two additional claims: juror misconduct and prosecutorial misconduct. The Michigan Supreme Court denied leave to appeal. *People v. McCall*, 474 Mich. 1125 (Mich. Apr. 28, 2006).

Petitioner later filed a motion for relief from judgment in the trial court rasising the following claims:

I. Defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment and Const. 1963 Art. 1, Section 20.

> II. Where the fact of jury members' consumption of alcohol during a break in deliberations and their possible intoxication when they returned to deliberations was substantiated by an independent television news source and report and this indiscretion is cause for a new trial.
>
>> A. Defendant's rights under the Sixth Amendment to the United States Constitution were violated by allowing a verdict to stand which was arrived at by a jury that was possibly intoxicated during deliberations, without conducting an evidentiary hearing to determine the extent of their consumption of alcoholic beverages, what effect it may have had on their verdict, and that they allegedly discussed the case while drinking.
>
> III. Where defendant's assigned counsel for his appeal of right failed to raise a meritorious constitutional issue, defendant was denied due process by counsel's failure to raise the above issue, which resulted in a deprivation of defendant's constitutional rights to appeal, and to the effective assistance of counsel on appeals.

The trial court denied the motion for relief from judgment. *People v. McCall*, No. 2003-0897-FC (Macomb County Circuit Court Feb. 28, 2007).

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. McCall*, No. 276974 (Mich. Ct. App. July 26, 2007); *People v. McCall*, 480 Mich. 1004 (Mich. Dec. 28, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the following claims:

> I. The trial court's allowance of other uncharged act evidence, pursuant to MRE 404(b), and related hearsay utterances, was an abuse of discretion which denied Petitioner his state and federal constitutional rights to a fair trial.
>
> II. Petitioner was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through misconduct of the prosecutor, which consisted of a pattern of improper presentation of evidence and argument.
>
> III. Petitioner was denied the effective assistance of counsel guaranteed by the Sixth Amendment and Const. 1963 Art. 1, Section 20.

3

IV. Where the fact of jury members' consumption of alcohol during a break in deliberations and their possible intoxication when they returned to deliberations was substantiated by an independent television news source and report and this indiscretion is cause for a new trial.

    A. Petitioner's rights under the Sixth Amendment to the United States Constitution were violated by allowing a verdict to stand which was arrived at by a jury that was possibly intoxicated during deliberations, without conducting an evidentiary hearing to determine the extent of their consumption of alcoholic beverages, what effect it may have had on their verdict, and that they allegedly discussed the case while drinking.

V. Where Petitioner's assigned counsel for his appeal of right failed to raise a meritorious constitutional issue, Petitioner was denied due process by counsel's failure to raise the above issue, which resulted in a deprivation of Petitioner's constitutional rights to appeal, and to the effective assistance of counsel on appeals.

### III.

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

4

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV.

### A.

In his first claim, Petitioner argues that his state and federal constitutional rights to a fair trial were violated when the trial court admitted testimonial and photographic evidence of other uncharged acts pursuant to MRE 404(b). Specifically, Petitioner objects to the testimony of Clinton Township Police Officer Dena Caringi regarding an incident at the victim's house on September 2, 2002. Officer Caringi was called to testify as a rebuttal witness after Petitioner testified that he had slapped Burnett for the first time in September 2002, and defense expert witness Dr. Lyle Danuloff testified that Petitioner had told him that the relationship with Burnett had been non-violent. Officer Caringi testified that she arrived at Burnett's home in response to a 911 call on September 2, 2002. She found Burnett lying on a stretcher being treated by emergency medical personnel. Burnett had a laceration under her eye, bruising, redness, and swelling on her cheek and forehead, and a bite mark on her breast. Officer Caringi identified several photographs as actually depicting the blood-stained scene of the beating, and a photograph of Burnett's injuries. She further testified that Burnett told her that Petitioner had said he was going to kill her and would not stop beating her.

5

The Michigan Court of Appeals held that the admission of Officer Caringi's testimony and the photographs was proper, reasoning, in relevant part:

> Before trial, the prosecutor filed a notice of intent to introduce prior bad acts evidence under MRE 404(b). The prosecutor also filed a motion to strike the testimony of defendant's expert witness, Dr. Lyle Danuloff, a clinical psychologist who evaluated defendant "regarding the possibility that the charge against him could be changed to Voluntary Manslaughter." The prosecutor moved to strike Dr. Danuloff's testimony on the ground that defendant's hearsay and self-serving statements to Dr. Danuloff would be admitted into evidence without defendant taking the stand. The trial court apparently denied both motions,[] ruling that the prosecutor could not introduce evidence of prior bad acts in his case-in-chief, but could introduce evidence of prior bad acts in rebuttal or on cross-examination.[] Indeed, the record contains a "hearing disposition" which states in part that the "Parties stipulate that if the defendant testifies, then Dr. Danuloff can testify. People can cross-examine both as to prior incidents."[3]
>
> Defendant testified in his own behalf and described his relationship with the victim as free of domestic abuse except for a "slap" that occurred on September 30, 2002. Dr. Danuloff testified that defendant stated in an interview with Dr. Danuloff that he and the victim had a non-violent relationship, that there was no domestic abuse between defendant and the victim, and that police had never been called as a result of any abuse. On rebuttal, Clinton Township Police Officer Dena Caringi testified that she was called to a disturbance at the victim's house approximately one month before the victim was killed. Caringi testified that the victim said defendant beat her as she lay on the floor of her home, would not stop beating her to allow her to get up, and threatened to kill her. The prosecution also introduced photographs showing evidence of the victim's injuries from the altercation. Defendant now argues that the admission of the rebuttal testimony and photographs was an attempt to introduce defendant's prior bad acts in violation of the rules of evidence. The decision whether to admit other-acts evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *People v. Starr*, 457 Mich. 490, 494; 577 N.W.2d 673 (1998).
>
> . . . Rebuttal evidence is admissible to "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996). Caringi's rebuttal testimony was proper in scope and purpose because it directly weakened and impeached the testimony of defendant's expert that defendant and the victim had a non-violent relationship. Caringi's testimony regarding her prior contact with the victim and defendant was relevant and not unfairly prejudicial, and was properly admitted.

> With regard to the admission of the photographs on rebuttal, we note that defense counsel objected at trial on the ground that the defense had not been given sufficient notice of the photographs and that the prosecutor had not previously produced them during discovery. Thus, defendant did not preserve any issues regarding admissibility of the photographs under MRE 404(b), . . . and we find no plain error affecting substantial rights. MRE 103(d); *People v. Carines*, 460 Mich. 750, 763-765; 597 N.W.2d 130 (1999).
>
> ─────────────────────────────
>
> [3] The "prior incidents" referred to include a September 2, 2002, incident and a September 30, 2002, incident, both of which resulted in the police being summoned to the scene.

*People v McCall*, 2005 WL 2679689 at * 1-2.

It is well established that "federal habeas corpus review does not lie for errors of state law." *Louis v. Jeffers*, 497 U.S. 764, 780 (1990). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 353, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). Thus, to the extent that Petitioner alleges violations of Michigan law, the claims are not cognizable upon federal habeas review.

Petitioner must overcome a high threshold in order to demonstrate that the trial court's evidentiary ruling was unconstitutional. "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). In general, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). Moreover, there is no Supreme Court precedent establishing that a state violates due process by allowing the admission of other acts evidence. *Id.* "While the Supreme Court has addressed whether prior acts

testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Id.* at 513.

Petitioner is unable to show that the admission of other acts testimony or exhibits was a ruling so egregious as to violate his fundamental rights. The evidence was directly relevant to Petitioner's and Dr. Danulof's testimony and directly contradicted Petitioner's trial testimony. Further, because the trial court's admission of other acts evidence is not contrary to or an unreasonable application of Supreme Court precedent, Petitioner's claim for habeas relief is denied.

**B.**

In his second habeas claim, Petitioner argues that the prosecutor engaged in misconduct through a pattern of improper presentation of evidence and improper argument. Specifically, Petitioner objects to the closing argument in which the prosecutor argued that the victim had outgrown Petitioner, that he did not care about his son to the extent he alleged in his trial testimony, and that Petitioner was angry because his "gravy train" had ended. Tr., 10/8/03 at p. 81.

Respondent argues that this claim is procedurally defaulted because defense counsel failed to object to the prosecutor's closing. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the

8

Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief. *Id*. at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made

9

deliberately or accidentally." *Id*. (citation omitted).

In this case, although the state court held that the claim was not preserved for appellate review, the state court nevertheless addressed the merits of the claim. The state court held that the prosecutor's argument relied on inferences properly drawn from evidence presented at trial regarding Petitioner's actions toward the victim and her son. *McCall*, 2005 WL 2679689 at * 2. The state court further concluded that the prosecutor did not argue facts not in evidence nor was Petitioner prejudiced by the prosecutor's closing argument. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. As noted by the state court, the prosecutor's argument was based upon inferences drawn from the testimonial evidence. Moreover, Petitioner has failed to show that he was prejudiced by the closing argument. Petitioner has not established that the disputed remarks were improper or that those remarks deprived him of a fundamentally fair trial. Therefore, habeas relief is not warranted on this claim.

## C.

Petitioner's third and fourth claims relate to allegations of juror misconduct. Petitioner states that certain jury members were seen drinking alcoholic beverages during a break in the deliberations. He argues that this alcohol consumption necessitated an evidentiary hearing in the trial court to assess the potential impact on deliberations and that, in the absence of an evidentiary hearing, the alcohol consumption violated Petitioner's right to fair and impartial jury. He further argues that counsel's handling of the alleged juror misconduct was ineffective.

The issue of the alleged juror misconduct was briefly addressed during sentencing proceedings. Defense counsel indicated to the court that he was aware of questions about juror

10

misconduct but was making a strategic decision not to raise the issue in the trial court and allow appellate counsel to raise the issue if counsel thought it an appeal-worthy one.

Respondent argues that this claim is procedurally defaulted. As noted above, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's jury-related claims.

"A defendant has a right to "a tribunal both impartial and mentally competent to afford a hearing." *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912). "As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial." *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citations omitted), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). "Thus, under clearly established federal law, jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, . . . and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA." *Fletcher v. McKee*, No. 08-1240, 2009 WL 4755293, *3 (6th Cir. Dec. 11, 2009).

The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences. *Remmer v. United States*, 347 U.S. 227, 229-230 (1954). The Sixth Circuit Court of Appeals has held that a *Remmer* hearing is required "in all cases involving an unauthorized communication with a juror or the jury from an outside source that presents a likelihood of affecting the verdict." *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995).

11

*See also Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir.1999) ("When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury.") *overruled on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir.2000). Absent an outside influence on a juror or the jury, the need for a *Remmer* hearing does not arise. *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997).

An extraneous influence on a juror is "'one derived from specific knowledge about or a relationship with either the parties or their witnesses.'" *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007) (*quoting United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)). Examples of extraneous influence include "'prior business dealings with the defendant, applying to work for the local district attorney, conducting an out of court experiment, and discussing the trial with an employee.'" *Id.* (*quoting United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005)). In contrast, "internal" influences include "the behavior of jurors during deliberations, the jurors' ability to hear and comprehend trial testimony, and the physical and mental incompetence of a juror." *Williams v. Bagley*, 380 F.3d 932, 945 n.7 (6th Cir. 2004).

With the possible exception of "substantial if not wholly conclusive evidence of incompetency, . . . allegations of the physical or mental incompetence of a juror" are treated as internal, rather than external, influences on jury deliberations and are not subject to post-verdict inquiry. *Tanner v. United States*, 483 U.S. 107, 118, 127 (1987), Moreover, "[w]hether the juror was literally inside or outside the jury room when the irregularity occurred has no bearing on the determination that a particular influence was external or internal." *U.S. v. Hernandez-Escarsega*,

886 F.2d 1560, 1579 (9th Cir. 1989) (*citing Tanner*, 483 U.S. at 117). The Supreme Court has recognized that "[t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," while simultaneously observing that "[i]t is not at all clear . . . that the jury system could survive such efforts to perfect it." *Tanner*, 483 U.S. at 120. "Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Id.* at 120-21.

In *Tanner*, the Supreme Court placed drug or alcohol use squarely in the realm of internal influences: "However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an "outside influence" than a virus, poorly prepared food, or a lack of sleep." *Id.* at 122. Thus, the allegation of juror alcohol consumption in this case constitutes an internal influence, that did not require a hearing and into which court inquiry is not appropriate.

Petitioner also alleges that counsel was ineffective in his handling of the allegation of juror intoxication. To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, a

13

petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

As noted above, Supreme Court law did not require the trial judge to have made further inquiry of the jury in this case because the nature of the influence on the jury was intrinsic, which did not require an evidentiary hearing. *See Tanner*, 483 U.S. at 120. Counsel was not ineffective in failing to move for a hearing where none was warranted. In addition, Petitioner has not shown that he was prejudiced by counsel's failure to request a hearing where the alleged influence on the jurors was internal rather than external. Counsel is not required to proceed in a manner inconsistent with controlling Supreme Court precedent.

Habeas relief is denied on this claim.

**D.**

Finally, Petitioner argues that appellate counsel was ineffective in failing to raise on direct appeal the issue of the jurors' alleged consumption of alcohol. Ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). The same deference owed by a court to a trial attorney in reviewing that attorney's performance is owed to an appellate attorney. "Counsel's performance is strongly presumed to be effective." *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (*citing Strickland*, 466 U.S. at 690).

As discussed above, Petitioner has not shown that the trial court mishandled the

14

allegation of juror intoxication nor has he shown that counsel was ineffective in his handling of the issue. Because Petitioner's claims are meritless, there is no probability that inclusion of those claims on direct appeal would have changed the result. Thus, appellate counsel was not ineffective.

V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability.

VI.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition.

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

                                                  s/Marianne O. Battani
                                                  MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

Dated: June 4, 2010

## CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Pierre Lamar McCall, and counsel for the Respondent via ordinary U.S. Mail and electronic filing.

                                                  s/Bernadette M. Thebolt
                                                  Case Manager